IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTOPHER BOWEN,**

    **Petitioner,**

    v.

**WARDEN, BELMONT CORRECTIONAL INSTITUTION,**

    **Respondent.**

**CASE NO. 2:20-CV-2119**
**JUDGE SARAH D. MORRISON**
**Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

### I. BACKGROUND

Petitioner challenges his convictions after a jury trial in the Muskingum County Court of Common Pleas on charges of possession and trafficking in drugs. The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} Detective Matt Wilhite, with the Muskingum County Sheriff's Office and assigned to the Central Ohio Drug Enforcement Task Force, was part of a drug investigation into Michael Brandon, Ronald Brandon, and April Jones. Based on the investigation, the task force obtained four search warrants for residences linked to those individuals. Ronald Brandon's residence was located at 1040-A Lindsay Avenue, within 1000 feet of an elementary school.
>
> {¶ 3} On the morning on May 26, 2016, the task force was going to execute the search warrants simultaneously. Det. Wilhite observed a green Chevy Avalanche truck parked on the street in front of 1040-A Lindsay Avenue. As part of his investigation, Det. Wilhite had previously observed the truck and knew it was owned and driven by Defendant-Appellant Christopher A. Bowen. Det. Wilhite

saw Ronald Brandon and Bowen together on numerous occasions during the investigation.

{¶ 4} Det. Wilhite instructed Detective Tanner Vogelmeier to deploy his K-9, Salsa, to conduct a free air sniff of the Chevy Avalanche. The K-9 conducted the sniff of the truck and alerted to the presence of narcotics. The vehicle was towed and impounded at the Muskingum County Sheriff's Office.

{¶ 5} The task force obtained a search warrant to search the inside of the truck. The detectives first found a shoe box that contained a one-gallon Ziplock bag containing marijuana. Next, a bag from a clothing store named "Jimmy Jazz" was located on top of the shoe box. Inside the clothing bag was a backpack, a leather case, a Crown Royal liquor bag, and a receipt for Jimmy Jazz clothing dated May 14, 2016. Inside the backpack was a one-gallon Ziplock bag containing marijuana, mason jars containing marijuana, a package of marijuana gummies, and paperwork from the Ohio Bureau of Motor Vehicles in Bowen's name. The leather case held digital scales and a small bag containing 1.29 grams of methamphetamine. The Crown Royal purple liquor bag contained three large bags of methamphetamine (167.25 grams total). The detectives also found a baggie of jeweler's bag and a baggie of rubber bands located near the shoe box and clothing bag. Finally, the detectives found Bowen's payroll checks, work clothing, and a hard hat. The hard hat was labeled in the name of Bowen. The items found in the vehicle were photographed.

{¶ 6} The drugs found in Bowen's vehicle were submitted to BCI for testing and were confirmed to be marijuana and methamphetamine. BCI also located Bowen's fingerprints on the small bag of methamphetamine.

{¶ 7} The detectives reviewed surveillance video from the Jimmy Jazz clothing store on May 14, 2016. Bowen is seen purchasing items from the Jimmy Jazz store and leaving with a Jimmy Jazz clothing bag identical to the one found in the Chevy Avalanche.

{¶ 8} Bowen was indicted by the Muskingum County Grand Jury on March 22, 2017. He was indicted on four counts: 1) Possession of drugs (methamphetamine) with a forfeiture specification, a first-degree felony in violation of R.C. 2925.11(A) and 2941.1417; 2) Trafficking in drugs (marijuana) with a juvenile/school specification and forfeiture specification, a third-degree felony in violation of R.C. 2925.03(A)(2) and 2941.1417; 3) Possession of drugs (marijuana) with a forfeiture specification, a fifth-degree felony in violation of R.C. 2925.11(A) and 2941.1417; and 4) Possession of drugs (Delta 9 – Tetrahydrocannabinol), a fifth-degree felony in violation of R.C. 2925.11(A).

{¶ 9} Bowen filed a motion to suppress evidence obtained from the Chevy Avalanche. He argued the evidence was obtained based on an unlawful seizure of the vehicle without a warrant. The trial court held a hearing and denied the motion via judgment entry on August 21, 2017.

{¶ 10} The matter came on for jury trial on October 24, 2017. Bowen objected to the State's peremptory challenge of Juror No. 4 under *Batson*. The trial court found the State established a non-discriminatory basis for the challenge. At the close of the defense's case, Bowen moved to allow the jury to consider whether Bowen was guilty of possession of methamphetamine in an amount less than 50 times the bulk amount because the evidence showed Bowen's fingerprint was found on one bag of methamphetamine containing less than the bulk amount. The trial court denied the motion.

{¶ 11} The jury found Bowen guilty of all charges and specifications. The trial court held a sentencing hearing on November 27, 2017 and issued its sentencing entry on November 30, 2017. The trial court sentenced Bowen to a concurrent prison term of ten years on Count One, 30 months on Count Two, 12 months on Count Three, and 12 months on Count Four. Bowen was ordered to pay a $15,000 fine and court costs.

The trial court further ordered Bowen's 2002 Chevy Avalanche seized and forfeited to the Muskingum County Sheriff's Office.

{¶ 12} It is from the November 30, 2017 sentencing entry Bowen now appeals.

ASSIGNMENTS OF ERROR

{¶ 13} Bowen raises six Assignments of Error:

{¶ 14} "I. THE TRIAL COURT ERRED BY DENYING BOWEN'S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 15} "II. THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION REQUIRED THE TRIAL COURT TO INSTRUCT THE JURY ON A LESSER INCLUDED OFFENSE OF FIRST-DEGREE FELONY POSSESSION OF METHAMPHETAMINE.

{¶ 16} "III. THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO REMOVE THE ONLY NON-CAUCASIAN ON THE JURY PANEL IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
{¶ 17} "IV. BOWEN'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES

3

> CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.
>
> {¶ 18} "V. BOWEN'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE 1 OF THE OHIO CONSTITUTION.
>
> {¶ 19} "VI. BOWEN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

*State v. Bowen*, 5th Dist. No. CT2017-0103, 2018 WL 5096079, at *1-2 (Ohio Ct. App. Oct. 15, 2018). On October 15, 2018, the appellate court affirmed the trial court's judgment. *Id*. On February 20, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Bowen,* 154 Ohio St.3d 1510 (Ohio 2019).

Petitioner also pursued post-conviction relief. On September 12, 2019, he filed a post-conviction petition in the state appellate court. The appellate court dismissed that action for lack of jurisdiction, because it must be filed in the state trial court. (ECF No. 7, PAGEID # 246, 272.) Thereafter, on January 21, 2020, Petitioner filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (PAGEID # 273.) On April 2, 2020, the appellate court denied that action as untimely. (*Judgment Entry*, PAGEID # 306.) Petitioner did not file an appeal.

On April 28, 2020, Petitioner filed this *pro se* habeas corpus petition. He asserts that he was denied the effective assistance of trial counsel (claim one); that his convictions are against the manifest weight of the evidence and that the evidence is constitutionally insufficient to sustain his convictions (claim two); that his convictions violate the Double Jeopardy Clause (claim three); his convictions violate the Fourth Amendment (claim four); the prosecutor unconstitutionally removed the only non-white member from the jury panel (claim five); the trial court improperly

4

failed to remove two members of the jury panel with personal relationships to the prosecutor or police or prior knowledge about the case (claim six); the failure to conduct drug comparison of evidence denied him a fair trial (claim seven); violation of state evidentiary rules denied him a fair trial (claim eight); and the withholding of evidence of the location of the Chevy Avalanche and lack of testing of drugs in the vehicle in comparison of the chemical formulation from within the house denied him a fair trial (claim nine). It is the Respondent's position that Petitioner's claims are procedurally defaulted or otherwise fail to provide a basis for relief.

## II.   STANDARD OF REVIEW

The standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United States Supreme Court has described the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley,* 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson*, 571 U.S. 992 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389. 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id*. at 748-49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.    CLAIM THREE

Beginning with Claim Three, Petitioner asserts that his convictions violate the Double Jeopardy Clause because he was denied the right to plead guilty to a lesser included offense and "forced to face the full charges without conclusive evidence to warrant denial of a lesser included charge." (*Petition*, ECF NO. 2, PAGEID # 74.) Liberally construing Petitioner's pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of a *pro se* complaint are to be held to less stringent standards than formal pleadings drafted by lawyers), the Court presumes that Petitioner intends to raise here the same issue that he presented in the Ohio Court of Appeals. There, he argued that the Double Jeopardy Clause required the trial court to issue jury instructions on a lesser included offense. (ECF No. 7, PAGEID # 227.) He has preserved this same claim for review in these proceedings. The state appellate court rejected the claim reasoning as follows:

> {¶ 29} Bowen contends in the second Assignment of Error that the trial court erred when it denied his request to instruct the jury on a lesser included offense for possession of methamphetamine.
>
> {¶ 30} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Bowen was charged with Possession of Methamphetamine (in an amount exceeding 50 times the bulk amount but less than 100 times the bulk amount), a first-degree felony in violation of R.C. 2925.11(A). Before jury deliberations, Bowen moved to allow the jury to consider whether Bowen was guilty of possession of methamphetamine in an amount less than 50 times the bulk amount. In his appeal, Bowen argues the trial court should have allowed the instruction on the lesser included offense because Bowen's fingerprint was only found on the small bag of methamphetamine found in the Jimmy Jazz clothing bag in the Chevy Avalanche.
>
> {¶ 31} "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Moore*, 5th Dist. Coshocton No. 14CA0028, 2016-Ohio-828, ¶ 91 quoting *State v. Conway,*

108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, ¶ 133, citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to defendant. *Id.*, 2006–Ohio–791 at ¶ 34, citing *State v. Smith*, 89 Ohio St.3d 323, 331, 731 N.E.2d 645 (2000) and *State v. Wilkins*, 64 Ohio St.2d 382, 388, 18 O.O.3d 528, 415 N.E.2d 303 (1980). Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser included offense. There must be "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." (Emphasis sic.) *Id.*, citing *State v. Shane*, 63 Ohio St.3d at 632–633, 590 N.E.2d 272.

{¶ 32} The facts of each case determine the necessity of instructing the jury on lesser crimes or lesser included offenses. *State v. Kidder*, 32 Ohio St.3d 279, 282, 513 N.E.2d 311 (1987); *State v. Loudermill*, 2 Ohio St.2d 79, 80, 206 N.E.2d 198 (1965). The degree of the offense of possession of drugs, however, is determined by the amount of drugs involved. See R.C. 2925.11(C). "When the severity of the offense is determined by the amount of controlled substance involved, the amount becomes an essential element of the offense. In order to obtain a conviction, the prosecution must prove that element, and the jury must so find, beyond a reasonable doubt." *State v. Cargile*, 8th Dist. Cuyahoga No. 89964, 2009-Ohio-6630, 2009 WL 4857298, ¶ 13 citing *State v. Chamblin*, 4th Dist. No. 02CA753, 2004-Ohio-2252, ¶ 13, citing *State v. Smith* (1983), 14 Ohio App.3d 366, 371, 471 N.E.2d 795.

{¶ 33} In this case, Bowen was charged with possession of methamphetamine in an amount exceeding 50 times the bulk amount but less than 100 times the bulk amount. The charge was based on four bags of methamphetamine found inside the Chevy Avalanche, which in total weight exceeded 50 times the bulk amount but less than 100 times the bulk amount. The task force's search of the interior of the truck resulted in the discovery of a Jimmy Jazz clothing bag. Inside the Jimmy Jazz clothing bag was a small bag of methamphetamine and a Crown Royal liquor bag containing three large bags of methamphetamine. Evidence was presented in the form of a receipt found in the clothing bag and security video that Bowen purchased items from the Jimmy Jazz clothing store. Det. Wilhite testified he observed Bowen driving the Chevy Avalanche during his investigation. The jury could have concluded the evidence showed Bowen possessed a bulk amount exceeding 50 times the bulk mount by less than 100 times the bulk amount.

{¶ 34} The evidence presented at trial did not warrant an instruction on a lesser included offense. Bowen's second Assignment of Error is overruled.

*State v. Bowen*, 2018 WL 5096079, at *4-5.

"Under AEDPA, a threshold issue is to determine whether there is 'clearly established' law governing the case." *Belton v. Woods*, No. 5:16-cv-10647, 2017 WL 2132245, at *3 (E.D.

8

Mich. May 17, 2017) (citing *Carey v. Musladin*, 549 U.S. 70, 74-77 (2006)). "Law is 'clearly established' when Supreme Court precedent unambiguously provides a 'controlling legal standard.'" *Id.* (citing *Panetti v. Quarterman,* 551 U.S. 930, 953 (2007)). The Supreme Court has not held that the Constitution provides a criminal defendant in a non-death penalty case the right to a jury instruction on a lesser-included offense:

> The right to an instruction on a lesser-included offense in a noncapital case has not been clearly established by the Supreme Court. *See Parker v. Burt*, 595 F. App'x 595, 605 (6th Cir. Mich. 2015). The Sixth Circuit stated, "[t]he Supreme Court . . . has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *McMullan v. Booker,* 761 F.3d 662, 667 (6th Cir. 2014); *see also Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) ("[T]he Constitution does not require a lesser-included offense instruction in non-capital cases.") (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc) ).

*Belton v. Woods*, 2017 WL 2132245, at *4. Thus, "[t]he failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is [ ] not an error cognizable in federal habeas review." *Robinson v. Winn*, No. 4:16-cv-11738, 2018 WL 1522437, at *7 (E.D. Mich. March 28, 2018) (citing *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir.), *cert. denied*, 496 U.S. 929 (1990); *Scott v. Elo*, 302 F. 3d 598, 606 (6th Cir. 2002), *cert. denied*, 537 U.S. (2003)).

> In the absence of a further Supreme Court decision on this matter, a state court determination of whether instructions on lesser-included offenses were necessary cannot be contrary to, or an unreasonable application of, clearly established Supreme Court precedent; and thus, falls beyond the authority of a habeas court. *See McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014); *Tegeler v. Renico,* 253 F App'x. 521, 525 (6th Cir. 2007) (where an open question exists in Supreme Court jurisprudence as to a particular issue of law, no violation of "clearly established" federal law as determined by the Supreme Court can be shown).

*Howard v. Dewine,* No. 5:14-cv-2587, 2016 WL 2637757, at *8 (N.D. Ohio April 6, 2016). Consequently, any error in jury instructions will only provide relief where the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 135, 154 (1977) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). For the reasons

9

discussed by the state appellate court, the record fails to reflect such circumstances here. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id*. at 155. The appellate court reasonably concluded that the facts did not support an instruction on the lesser included offense requested.

Claim three is without merit.

## IV. CLAIM FOUR

In claim four, Petitioner asserts that his convictions violate the Fourth Amendment. Generally, Fourth Amendment claims do not provide a basis for federal habeas corpus relief, so long as the petitioner had an opportunity to present the claim to the state courts. *Stone v. Powell*, 428 U.S. 465, 482 (1976); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (holding that an opportunity for full and fair litigation of a Fourth Amendment claim exists where the state procedural mechanism presents an opportunity to raise the claim, and presentation of the claim was not frustrated by a failure of that mechanism.)

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. [*Stone v. Powell*], at 490, 96 S.Ct. 3037. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great. *Id.* at 493, 96 S.Ct. 3037.

*Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013). Ohio permits a criminal defendant to file a motion to suppress evidence prior to trial. Ohio R. Crim. P. 12(C)(3).

Here, the record reflects no basis upon which to find that Petitioner could not present his claims under the Fourth Amendment because of a failure of Ohio's procedural mechanism. To the contrary, the trial court held a hearing on Petitioner's motion to suppress evidence before denying the motion (ECF No. 7, PAGEID # 153) and the appellate court thereafter affirmed the trial court's denial of Petitioner's motion to suppress evidence. *State v. Bowen*, 2018 WL

10

5096079, at *3. Petitioner also had the opportunity to raise the issue in the Ohio Supreme Court. Thus, although Petitioner did not obtain a ruling in his favor, he had multiple opportunities to litigate this claim.

Claim four does not provide Petitioner a basis for relief.

## V.  CLAIM FIVE

In claim five, Petitioner asserts he was denied a fair trial under *Batson v. Kentucky*, 476 U.S. 79 (1986), because the prosecutor exercised a peremptory challenge to remove the only non-white member from the jury panel. The state appellate court rejected this claim as follows:

> {¶ 35} Bowen argues in his third Assignment of Error that the trial court erred in permitting the State to exercise a peremptory challenge against a non-Caucasian juror pursuant to the Supreme Court's ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Bowen is African-American and argues Juror No. 4 was the only non-Caucasian juror on the panel.
>
> {¶ 36} Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise *Batson* test when racial discrimination has been alleged in opposition to a peremptory challenge." *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 99, 1997–Ohio–227, 676 N.E.2d 872.
>
> {¶ 37} In *Hicks*, the Ohio Supreme Court set forth the *Batson* test as follows: First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike.[ ]. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate'.[ ]. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. [ ]. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation 'related to the particular case to be tried.' [ ]. A simple affirmation of general good faith will not suffice. However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' [ ]. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext

11

for exclusion based on race. [ ]. (Internal citations omitted.) *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 98–99, 1997–Ohio–227, 676 N.E.2d 872.

{¶ 38} Although the striking party must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible;" so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767–768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam); *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 973–74, 163 L.Ed.2d 824 (2006).

{¶ 39} Finally, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett, supra*, 514 U.S. at 766–768. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. *Id*. at 768. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *State v. Nash*, 5th Dist. Stark No. 1995CA00024, 1995 WL 498950, 2 (August 14, 1995). This final step involves considering "the persuasiveness of the justification" proffered by the striking party, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett, supra*, at 768.

{¶ 40} Counsel and the trial court had the following discussion regarding the State's peremptory challenge to Juror No. 4:

THE COURT: I'm not even positive. I believe she was the only – I think she's a minority, and I believe she was the only person on the original panel of twelve. So there's – you asked for *Batson*. Basis.

\* \* \*

MS. TAMILARASAN: I think – well, we would challenge the peremptory based on *Batson*. This is the only minority on the initial panel and to strike her would –

\* \* \*

MR. WELCH: First, Your Honor, I was not certain she was a minority. I do not know that. But the reason that she was excused is she hesitated a little bit, had some difficulty with the one witness information, and primarily because she's provided legal advice to individuals. The first juror that was dismissed was dismissed because she is a paralegal for a law firm and provides legal information to individuals.

THE COURT: All right. I'm going to allow the peremptory challenge, but we needed to put on the record your basis.

12

(T. 159-160).

{¶ 41} The record in this case supports the State's race-neutral explanation for the peremptory challenge. Bowen was charged with trafficking in marijuana and possession of marijuana. When asked how she felt about the legalization of marijuana, Juror No. 4 stated marijuana was no worse than alcohol. (T. 74-75). Juror No. 4 did state she could find Bowen guilty of trafficking or possession if proven guilty. (T. 75). The State asked the potential panel if the State called just one witness to testify, would the jurors be able to sign a verdict form of guilty if the jurors believed the witness and the testimony covered everything it was supposed to cover. (T. 95). Juror No. 4 responded she would struggle with one witness and would prefer physical evidence to corroborate the witness's statement. (T. 97-98). Finally, Juror No. 4 testified she was once employed as a governmental civil rights specialist, which required her to instruct individuals how to file a discrimination complaint. (T. 143-144).

{¶ 42} The State provided the trial court with a clear and specific explanation of its legitimate reasons for exercising the challenge. The record in this case supports the State's race-neutral explanation and the trial court did not err in finding the State met its burden.

{¶ 43} Bowen's third Assignment of Error is overruled.

*State v. Bowen*, 2018 WL 5096079, at *6-7.

In determining whether the prosecution unconstitutionally exercised a peremptory challenge to excuse a potential juror based on race,

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id*., at 96–97, 106 S.Ct., at 1722–1723. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id*., at 97–98, 106 S.Ct., at 1723–1724. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id*., at 98, 106 S.Ct., at 1723.

*Hernandez v. New York,* 500 U.S. 352, 358 (1991).

> In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights v.*

13

> *Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *see also Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). " 'Discriminatory purpose' . . . . implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (footnote and citation omitted); *see also McCleskey v. Kemp*, 481 U.S. 279, 297–299, 107 S.Ct. 1756, 1769–1770, 95 L.Ed.2d 262 (1987).
>
> A neutral explanation in the context of our analysis . . . means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Hernandez*, 500 U.S. at 360–61.

Here, as discussed by the state appellate court, the prosecutor provided a facially race-neutral explanation for exercising the peremptory challenge. *See Purkett v. Elem*, 514 U.S. 765, 767 (1995) (noting that the second step of *Batson* does not require the prosecutor to provide "an explanation that is persuasive, or even plausible.")

Under the third step of *Batson*, Petitioner has the burden of demonstrating that the prosecutor's explanation was "merely a pretext for a racial motivation." *Franklin v. Anderson*, 267 F. Supp. 2d 768, 784 (S.D. Ohio 2003) (quoting *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001)). "The burden of persuasion always rests with the opponent of the strike." *Id*. Moreover, "the state court's factual finding of no discrimination is presumed to be correct." *Id.* (citing *Purkett v. Elem*, 514 U.S. at 769) (other citations omitted); *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.2003) (quoting *Hernandez,* 500 U.S. 352, 367 (1991) (other citations omitted).

> [W]here "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility . . . habeas review . . . does not sufice to supersede the trial court's credibility determination." *Rice,* 546 U.S. at 341–42, 126 S.Ct. 969, 163 L.Ed.2d 824 (emphasis added). *Cf. Uttecht v. Brown*, 551 U.S. 1, 127 S.Ct. 2218,

14

2224, 167 L.Ed.2d 1014 (2007) (according deference to the state trial court's decision to excuse a prospective juror for cause in a death penalty case).

*Braxton v. Gansheimer,* 561 F.3d 453, 463 (6th Cir. 2009).

Applying these standards, Petitioner has failed to meet his burden of establishing discriminatory intent.

Claim five is without merit.

## VI. PROCEDURAL DEFAULT

Petitioner has procedurally defaulted his remaining claims.

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process.

15

This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause

16

sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id*.

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were

>no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

Here, Petitioner failed to present his remaining claims either in the Ohio Court of Appeals or to the Ohio Supreme Court. (*See Memorandum in Support of Jurisdiction*, ECF No. 7, PAGEID # 227.) Further he may now no longer do so, under Ohio's doctrine of *res judicata*. The United States Court of Appeals for the Sixth Circuit has repeatedly held that Ohio's *res judicata* rule constitutes an adequate and independent state ground to foreclose federal habeas corpus review. *See Gerth v. Allen Oakwood Corr. Inst.*, 938 F.3d 821, 830 (6th Cir. 2019) (citing *Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010) ("The Ohio Court of Appeals's reliance on *res judicata* was an adequate and independent state ground to foreclose habeas relief in federal court."); *Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008); *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004); *Martin v. Mitchell*, 280 F.3d 594, 604 (6th Cir. 2002)). Petitioner has failed to establish cause for his procedural defaults.

## VII. DISPOSITION

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                 _s/ *Elizabeth A. Preston Deavers*_
                                                 Elizabeth A. Preston Deavers
                                                 Chief United States Magistrate Judge